**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                              :
NEW JERSEY CARPENTERS FUNDS,                  :
et al.,                                       :
                                              :
                    Plaintiffs,               :        Civil Action No. 05-4795 (JAP)
          v.                                  :
                                              :
KULLMAN INDUSTRIES, INC., et al.,             :
                                              :        **OPINION**
                    Defendants.               :
_____:

APPEARANCES:

Vincent M. Giblin, Esq.
Kroll Heineman Giblin, LLC
99 Wood Avenue South, Suite 307
Iselin, NJ 08830
          *Attorney for Plaintiffs*

Robert H. Bernstein, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
          *Attorney for Defendant John J. Lefkus, III*

PISANO, District Judge.

On May 24, 2007, Plaintiffs New Jersey Carpenters Funds ("Funds") and the Trustees

thereof, John Ballantyne, Eustace Eggie, Mark Keple, and New Jersey Regional Council of

Carpenters and its Local 821 (collectively, "Plaintiffs") filed a First Amended Complaint in this

Court against Defendants Kullman Industries, Inc., ("Kullman") and John J. Lefkus, III

("Lefkus"), alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. §§

-1-

1001 *et seq.*, ("ERISA").  Presently before the Court is a motion by Defendant Lefkus to dismiss the claims brought against him for failure to state a claim upon which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth herein, the Court grants Defendant Lefkus's motion to dismiss and dismisses Plaintiffs' First Amended Complaint as to Defendant Lefkus.

## I.      BACKGROUND

This dispute arises from an employer's failure to pay contributions to the Funds over a certain period of time.  Plaintiffs include a labor organization, Funds established for employee benefits pursuant to ERISA, 29 U.S.C. §§ 1002(3) and 1002(37), and the Trustees of those Funds.  Defendant Kullman is a New Jersey corporation engaged in the business of manufacturing prefabricated metal buildings and employed those beneficiaries to the Funds that are represented by Plaintiff Union.  Pursuant to a collective bargaining agreement ("the agreement"), Kullman agreed to remit contributions to the Funds on behalf of those employees covered within the agreement.  To serve the Funds, Defendant Lefkus, the Executive Vice-President and Chief Operations Officer for Kullman, was also an Employer-Trustee between June 22, 2004 and September 28, 2005.  Members of the Union served as additional Trustees to the Funds.

According to Plaintiffs, Lefkus informed the other Trustees, on June 22, 2005 and July 20, 2005, that Kullman could not make the contribution payments required under the agreement because Kullman required "the cash flow [necessary] to compete for work against . . . non-New Jersey companies."  (First Am. Cmplt. ¶ 22).  Specifically, Plaintiffs allege that Lefkus told the Trustees that "Kullman's delinquency actually benefitted the Funds because Kullman was able to

use those monies to create more jobs which ultimately resulted into additional contributions to the Funds."  (First Am. Cmplt. ¶ 22).  "Lefkus also stated that the internal bookkeeping procedures at Kullman required a delay in making the contribution payments because Kullman could not produce the necessary remittance forms before the payment date became due."  (First Am. Cmplt. ¶ 23).  As a result, Plaintiffs allege that Kullman has failed to pay $212,924.94 in benefit contributions.

On September 27, 2005, Kullman issued a Notification under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*, ("WARN Act") advising its employees that, due to financial hardship, Kullman may cease its operations on September 30, 2005.  The following day, Lefkus resigned as an Employer-Trustee to the Funds.  On September 29, 2005, the Union Trustees to the Funds demanded reasonable assurance from Kullman that it would make all outstanding benefit payments, to which Kullman did not respond.  Shortly thereafter, on October 17, 2005, Kullman filed for bankruptcy under Chapter 11 of the Bankruptcy Code and, on March 6, 2007, the Bankruptcy Court confirmed the Debtor's Second Amended Liquidating Plan of Reorganization.

In their First Amended Complaint, Plaintiffs seek to hold Lefkus personally liable for the unpaid contributions.  Plaintiffs allege that Lefkus breached his fiduciary duty to the Funds' beneficiaries by failing to fulfill his duties as required by section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), and by acting "in a transaction involving the Funds on behalf of a party-in-interest whose personal interests were adverse to the interests of the Funds or to the interests of the participants and beneficiaries, in violation of section 406(b)(2) of ERISA, 29 U.S.C. § 1106(b)." (First Am. Cmplt. ¶ 37).  Plaintiffs also allege that Lefkus "dealt with assets of the Funds in [his]

-3-

own interest and for [his] own account, in violation of section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1)." (First Am. Cmplt. ¶ 39).  Plaintiffs seek a judgment entered against Defendant Lefkus for the amount of Kullman's delinquency and "[r]estitution for losses sustained by the Funds as a result of [his] breaches of fiduciary duties along with lost opportunity costs and investment income[,]" in addition to costs, expenses, attorney fees, and any other "relief as may be appropriate[.]"  (First Am. Cmplt. ¶ 40).

Lefkus now seeks a dismissal of Plaintiffs' claims against him, in accordance with Federal Rule of Civil Procedure 12(b)(6).  He argues that, although he was an Employer-Trustee to the Funds, Plaintiffs cannot hold a fiduciary personally liable for money damages under ERISA.  In addition, Lefkus contends that Plaintiffs' First Amended Complaint fails to set forth any basis on which it could be determined that Lefkus breached any fiduciary duty owed to the Funds' beneficiaries or that Lefkus's actions caused Kullman to become delinquent in paying its contributions to the Funds.  In response, Plaintiffs oppose Lefkus's motion to dismiss by arguing that ERISA entitles them to hold a fiduciary, such as Lefkus, personally liable for delinquent contributions if that fiduciary breached his duties, and that Lefkus did breach his fiduciary duties as defined within ERISA.

## II.    DISCUSSION

### A.    Standard of Review under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  Previously, the standard of review under Rule 12(b)(6) permitted dismissal "only if it appear[ed] that the plaintiffs could prove no set of facts that would entitle them to relief."  *Watson v. Abington Twp.*, 478 F.3d 144,

151 (3d Cir. 2007) (internal quotations omitted).  Recently, however, the United States Supreme Court dispensed with that standard:  the "'no set of facts' language has been questioned, criticized, and explained away long enough. . . .  [T]his famous observation has earned its retirement."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

The *Twombly* Court refashioned the standard and found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, *supra*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

**B.    Analysis**

Plaintiffs allege that Lefkus breached his fiduciary duties owed to the Funds and their beneficiaries by "permitt[ing] the outstanding payments to amass while Kullman's financial condition deteriorated."  (First Am. Cmplt.¶ 24).  Plaintiffs base this conclusory statement on factual allegations found in only two paragraphs of their First Amended Complaint; Plaintiffs allege that, at two meetings of the Board of Trustees, on June 22 and July 20, 2005, Lefkus told

the other Trustees that, in order for the business to remain competitive with non-New Jersey companies, Kullman could not make contributions to the Funds as required by the agreement. (First Am. Cmplt. ¶¶ 22-23).  The issue thus becomes whether these allegations are sufficient to maintain a cause of action for a breach of a fiduciary duty against Lefkus.

Indeed, Lefkus, as an Employer-Trustee to the Funds, owed specific fiduciary duties to the Funds and the beneficiaries.  ERISA delineates the scope of those duties and requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[.]"  29 U.S.C. § 1104(a)(1).  In addition, a fiduciary must act "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable expenses of administering the plan[.]"  29 U.S.C. § 1104(a)(1)(A).  The fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]"  29 U.S.C. § 1104(a)(1)(B).

The fiduciary duties enumerated in ERISA, however, are not exhaustive; Congress intended "to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits."  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 152-53 (1985) (footnote omitted).  As a result, in addition to a duty not to misinform, a fiduciary also has "an affirmative duty to inform when the trustee knows that silence might be harmful."  *Bixler v. Cent. Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993).  However, that duty to disclose is qualified: "a fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must

-6-

know for its own protection." *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir. 1996). Thus, "[a]n ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plans . . . [or] to disclose its internal deliberations." *Peterson v. Am. Tel. & Tel. Co.*, 2004 WL 190295, *5 (D.N.J. 2004) (internal quotations omitted). "ERISA does not impose a duty of clairvoyance on fiduciaries." *Ibid.* (internal quotations omitted).

In addition to providing the parameters for a trustee's obligations, ERISA also imposes liability on a trustee who breaches his fiduciary duties. 29 U.S.C. § 1109 provides that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a). Thus, a "participant, beneficiary or fiduciary" may bring a civil action against a fiduciary who breaches any of his duties, seeking to hold him personally liable. 29 U.S.C. § 1132(a)(2).

Accordingly, pursuant to ERISA, Plaintiffs may bring a cause of action against Lefkus upon an allegation that he breached any of his statutory-imposed fiduciary obligations as an Employer-Trustee of the Funds. However, Plaintiffs' factual allegations fail to set forth any basis on which the Court could conclude that Lefkus breached a fiduciary duty, and Plaintiffs' "formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 127 S. Ct. at 1965. Even accepting as true all of Plaintiffs' allegations, the First Amended Complaint indicates that Lefkus made the required disclosures by informing the other Trustees that Kullman

would delay making contribution payments and that, in his view, this would eventually benefit the Funds.  (First Am. Cmplt. ¶¶ 22-23).  Indeed, Plaintiffs cannot now hold Lefkus liable for failing "to offer precise predictions" as to the benefits of delaying contribution payments and for failing to predict that the amount of money saved by Kullman by not remitting the contribution payments could not prevent Kullman's bankruptcy.  *Peterson*, *supra*, at *5.  Moreover, Plaintiffs have not made any factual assertions suggesting that Lefkus affirmatively misled the other Trustees or the beneficiaries in respect of Kullman's contributions to the Funds or failed to disclose any "material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection."  *Glaziers*, *supra*, 93 F.3d at 1182.  Therefore, assuming as true all factual allegations in Plaintiffs' First Amended Complaint, Plaintiffs' allegations as to Lefkus are not "enough to raise a right of relief above the speculative level" as they have not alleged any breach of any fiduciary duty.  *Twombly*, *supra*, 127 S. Ct. at 1965.

The Court further notes that, in addition to his ERISA-imposed fiduciary obligations, Lefkus also owed fiduciary duties as Kullman's officer and, thus, "wore two hats."  *See In re Honeywell Int'l ERISA Litig.*, 2004 WL 3245931, *6 (D.N.J. 2004) ("ERISA permits a fiduciary to wear 'two hats'-for example by functioning at different times as an employer and a fiduciary.").  Although ERISA requires "the fiduciary with two hats [to] wear only one at a time, and wear the fiduciary hat when making fiduciary decisions[,]" Lefkus was legally bound to serve simultaneously the interests of Kullman, the Funds, and its beneficiaries.  *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).  By honestly informing the Funds' other trustees that it could be beneficial for both Kullman and the Funds to delay making contribution payments, Lefkus fulfilled his fiduciary obligations to both Kullman and the Funds.  Significantly, Lefkus

-8-

informed Plaintiffs, the Union Trustees, that Kullman faced financial difficulty in competing with other business about three months prior to the issuance of Kullman's WARN Act Notification.  With that notice, the Union Trustees, who now seek to hold Lefkus personally liable, made no objections and sought no action as to Kullman's decision to delay contribution payments; the Union Trustees then were in no different position than Lefkus, but for the fact that Lefkus was also a Kullman officer.  As a result, if Plaintiffs' claims against Lefkus could withstand a motion to dismiss, Lefkus would be able to bring cross-claims against the Union Trustees for alleged breaches of their fiduciary duties.

Taking Plaintiffs' argument to its logical conclusion, Plaintiffs would seek to hold every employer-trustee personally liable for any deficiency in an ERISA benefits fund based on that trustee's status as an employer.  However, there is nothing within the statutory framework of ERISA that "indicate[s] that Congress intended to impose a personal liability on . . . a high-ranking officer of a corporation for ERISA contributions owed by the corporation."  *Solomon v. Klein*, 770 F.2d 352, 354 (3d Cir. 1985); *see also Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993) (finding that "an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager").  Indeed, Plaintiffs do not allege any basis for imposing personal liability on Lefkus; he made accurate representations as to Kullman's contributions to the Funds and resigned at the point in which he may have faced a conflict between his obligations owed to Kullman and those obligations owed to the Funds and its beneficiaries.  Because "[h]is liability is sought to be established simply because of his dominant role in the affairs of a corporate employer[,]" the Court holds that Plaintiffs' cause of action against Lefkus does not state a claim upon which relief could be granted.  *Sasso*, *supra*, 985 F.2d

-9-

at 51.

**III.    CONCLUSION**

For the reasons expressed above, the Court grants Defendant Lefkus's Motion to Dismiss Plaintiffs' First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  An appropriate order accompanies this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: October 12, 2007